**HAIG B. KAZANDJIAN LAWYERS APC**
Haig B. Kazandjian, Esq.
haig@hbklawyers.com
Cathy Gonzalez, Esq.
cathy@hbklawyers.com
801 North Brand Boulevard, Suite 970
Glendale, California 91203
Telephone: 1-818-696-2306
Facsimile: 1-818-696-2307

**HAINES LAW GROUP, APC**
Fletcher W. Schmidt
fschmidt@haineslawgroup.com
Matthew K. Moen
mmoen@haineslawgroup.com
2155 Campus Drive, Suite 180
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN MURPHY, GABRIEL SCHWARTZ, MARC BREWER, and GARRISON MORENO, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FUSION LEARNING, INC., a Delaware Corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 2:21-cv-06732-JAK-AS<br>Related Case: 2:22-cv-04497-JAK-AS<br><br>[*Assigned to Hon. Judge John A. Kronstadt*]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, ADMINISTRATION EXPENSES, AND CLASS REPRESENTATIVES' SERVICE PAYMENTS**<br><br>Date:      July 8, 2024<br>Time:      8:30 a.m.<br>Courtroom: 10C<br><br>Action Filed:   July 8, 2021<br>Removal Date: August 19, 2021<br>Trial Date:      None Set |

NOTICE IS HEREBY GIVEN that on July 8, 2024, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 10C of the United States District Court for the Central District of California, First Street Courthouse, located at 350 West First Street, Los Angeles, California 90012, before the Honorable John A. Kronstadt, Plaintiffs Kevin Murphy, Gabriel Schwartz, Marc Brewer, and Garrison Moreno ("Plaintiffs" or "Class Representatives") and Class Counsel Haig B. Kazandjian Lawyers, APC and Haines Law Group, APC ("Class Counsel") will, and hereby do, move this Court for an order awarding attorneys' fees, reimbursement for litigation costs incurred, administrative expenses, and class representative service payments.

Pursuant to the proposed Class Action and PAGA Settlement Agreement and Class Notice ("Settlement Agreement"), Plaintiffs and Class Counsel seek an award of attorneys' fees of $416,666.66, equivalent to one-third of the non-reversionary Gross Settlement Amount of $1,250,000; an award of $41,835.27 for reimbursement of actual litigation costs incurred by Class Counsel; an award to CPT Group, Inc., the Settlement Administrator, of $14,500.00 in settlement administration costs; and service awards of $7,500.00 to Plaintiff Kevin Murphy, $5,000.00 to Plaintiff Gabriel Schwartz, $5,000.00 to Plaintiff Marc Brewer, and $4,500.00 to Plaintiff Garrison Moreno, as compensation for their roles in bringing and prosecuting this action, assisting Class Counsel, and the benefits conferred onto the Settlement Class members as a result of the litigation.

This Motion is based on this Notice; the supporting Memorandum of Points and Authorities; the supporting declarations of Matthew K. Moen, Fletcher W. Schmidt, Haig B. Kazandjian, and Cathy Gonzalez, and exhibits attached thereto; the supporting Declaration of Tarus Dancy of CPT Group, Inc.; the declarations of Plaintiffs Kevin Murphy, Gabriel Schwartz, Marc Brewer, and Garrison Moreno; the Settlement Agreement; the pleadings and other papers filed in this action; and

on any further oral or documentary evidence or argument presented at the time of hearing.

Dated:  May 20, 2024

Respectfully submitted,

HAINES LAW GROUP, APC

By:  *[signature]*

Matthew K. Moen

Attorneys for Plaintiffs

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................ 1

II. SUMMARY OF THE LITIGATION AND SETTLEMENT ............................ 2

    A. Brief Procedural History ...................................................................... 2

    B. This Class Action Settlement Results in Significant Monetary
       Payments Given the Litigation Risks Involved............................... 4

III. THE COURT SHOULD APPROVE THE FEE AWARD ............................ 5

    A. The Attorneys' Fee Award is Warranted Under California and
       Federal Law as a Percentage of the Common Fund................................ 5

    B. A Fee Award of One-Third of the Gross Settlement Amount is
       Warranted ...................................................................................... 7

        1. Class Counsel Obtained a Significant Recovery for the
           Class Despite Significant Risk ............................................... 9

        2. The Result Achieved Exceeds Results Achieved in Similar
           Wage and Hour Class Action Settlements ................................. 11

        3. Class Counsel's Efforts Support the Requested Fee Award........ 12

        4. Class Counsel's Experience and Skill Support the Fee Award ... 13

        5. The Complexity of the Issues Supports the Fee Award............... 14

        6. The Risk of Non-Payment Existed at All Times......................... 14

        7. The Reaction of the Class Members is Positive........................... 15

        8. The Lodestar "Cross-Check" Confirms the Reasonableness
           of the Fee Request ..................................................................... 16

           a. The Hours Expended on This Litigation are Reasonable ....... 16

           b. Counsel's Requested Hourly Rates are Reasonable .............. 18

           c. The Lodestar Multiplier is Reasonable ................................. 20

IV. PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE............. 21

V. THE ADMINISTRATOR'S EXPENSES SHOULD BE APPROVED.......... 22

VI. THE REQUESTED SERVICE PAYMENTS SHOULD BE APPROVED ... 23

VII. CONCLUSION ....................................................................................... 25

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>**Federal Cases**</u>

3

*Barbosa v. Cargill Meat Solutions Corp.*

4          297 F.R.D. 431 (E.D. Cal. 2013)..................................................... 15

5

*Bellinghausen v. Tractor Supply Co.*

6          306 F.R.D. 245 (N.D. Cal. 2015) ................................................... 23

7

*Bouman v. Block*

8          940 F.2d 1211 (9th Cir.1991) ........................................................ 18

*Camacho v. Bridgeport Fin., Inc.*

9          523 F.3d 973 (9th Cir. 2008) ......................................................... 18

10

*Chalmers v. City of Los Angeles*

11          796 F.2d 1205 (9th Cir. 1986) ....................................................... 18

12

*Craft v. County of San Bernardino*

13          624 F.Supp.2d 1113 (C.D. Cal. 2008)........................................ 9, 21

*Davis v. City & Cty. of San Francisco*

14          976 F.2d 1536 (9th Cir. 1992) ....................................................... 17

15

*Fischel v. Equitable Life Assur. Soc'y of U.S.*

16          307 F.3d 997 (9th Cir. 2002) ......................................................... 20

17

*Fischer v. SJB-P.D., Inc.*

18          214 F.3d 1115 (9th Cir. 2000) ....................................................... 16

*Gonzalez v. City of Maywood*

19          729 F.3d 1196 (9th Cir. 2013) ....................................................... 17

20

*Harris v. Marhoefer*

21          24 F.3d 16 (9th Cir. 1994) ............................................................. 21

22

*Hensley v. Eckerhart*

23          461 U.S. 424 (1983)...............................................................16-17

24

*In re Bluetooth Headset Prods. Liab. Litig.*

          654 F.3d 935 (9th Cir. 2011) ...................................................... 6, 9

25

*In re HPL Tech., Inc. Sec. Litig.*

26          366 F.Supp.2d 912 (N.D. Cal. 2005)........................................ 18, 20

27

*In re Nucorp Energy, Inc.*

28          764 F.2d 655 (9th Cir. 1985) ........................................................ 17

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

*In re Omnivision Technologies, Inc.*,
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ........................................................ 8

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994) .............................................................. 20-21

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
    131 S. Ct. 1325 (2011) .......................................................................... 23

*Moore v. James H. Matthews & Co.*
    682 F.2d 830 (9th Cir. 1982) ................................................................. 16

*Moreno v. City of Sacramento*
    534 F.3d 1106 (9th Cir. 2008) ............................................................... 17

*Parkinson v. Hyundai Motor Am.*
    796 F.Supp.2d 1160 (C.D. Cal. 2010) ................................................... 19

*Powers v. Eichen*
    229 F.3d 1249 (9th Cir. 2000) ................................................................. 7

*Rodriguez v. West Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ................................................................. 23

*Theme Promotions, Inc. v. News America Mktg. FSI, Inc.*
    731 F.Supp.2d 937 (N.D. Cal. 2010) ..................................................... 20

*Torchia v. W.W. Grainger, Inc.*
    304 F.R.D. 256 (C.D. Cal. Dec. 29, 2014) ............................................ 21

*Trustees of Const. Indust. & Laborers Health & Welfare Trust*
    *v. Redland Ins. Co.*
    460 F.3d 1253 (9th Cir. 2006) ............................................................... 21

*Van Vranken v. Atlantic Richfield Co.*
    901 F.Supp. 294 (N.D. Cal. 1995) ......................................................... 7-8

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ............................................... 6, 9, 16, 21

**State Cases**

*21st Century Ins. Co. v. Superior Court*
    (2009) 47 Cal.4th 511 ............................................................................. 6

*Augustus v. ABM Security Services, Inc*.
    (2016) 2 Cal.5th 257 ............................................................................. 14

iii

*Carrington v. Starbucks Corporation*
    (2018) 30 Cal.App.5th 504 ............................................................... 11

*Chavez v. Netflix, Inc.*
    (2008) 162 Cal.App.4th 43 ........................................................ 7, 21

*Graham v. DaimlerChrysler Corp.*
    (2004) 34 Cal.4th 553 ................................................................... 14

*Ketchum v. Moses*
    (2001) 24 Cal.4th 1122 ................................................................ 15

*Laffitte v. Robert Half Int'l, Inc.*
    (2016) 1 Cal.5th 480 ............................................................... 6, 16

*Price v. Starbucks Corp.*
    (2011) 192 Cal.App.4th 1136 ....................................................... 11

## State Statues and Rules

8 Cal. Code Regs. § 13520 ................................................................... 11

Cal. Code of Civ. Proc. § 1021.5 .......................................................... 6

Cal. Lab. Code § 218.5 ......................................................................... 6

Cal. Lab. Code § 226(e) .................................................................. 6, 11

Cal. Lab. Code § 2699 ..................................................................... 6, 11

## Unpublished Cases

*Aichele v. City of Los Angeles*
    Case No. 2:12-cv-10863-DMG-FFM
    2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) ...........................6, 7-8

*Allen v. City of Los Aneles*
    Case No. CV 91-2497 JGD
    1995 WL 433720 (C.D. Cal. Jan. 13, 1995) ................................. 17

*Ashker v. Sayre*
    Case No. 05-3759-CW
    2011 WL 825713 (N.D. Cal. Mar. 7, 2011) ................................. 21

*Carney v. Hillstone Restaurant Grp., Inc.*
    Case No. 2:10-cv-2988-GW-RZ
    (C.D. Cal. Apr. 5, 2011) ...........................................................11-12

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

*Casadine v. Maxim Healthcare Svcs, Inc.*
        Case No. CV 12-10078-DMG (CWx)
        (C.D. Cal. Sept. 24, 2015) .......................................................... 8

*Casique v. ValleyCrest Landscape Development, Inc.*
        Case No. CV09-9114 GHK (SSx)
        (C.D. Cal. November 2, 2011)...................................................... 12

*Charlebois v. Angels Baseball LP*
        Case No. SACV 10-0853 DOC (ANx)
        2012 WL 2449849 (C.D. Cal. May 30, 2012)............................... 19

*Cicero v. DirecTV, Inc.*
        Case No. EDCV-07-1182
        2010 WL 2991486 (C.D. Cal. Jul. 27, 2010) ................................ 7

*De Sejournet v. Goldman Kurland and Mohidin, LLP*
        Case No. 13-cv-1682-DMG (MRWx)
        (C.D. Cal. Mar. 18, 2016) ............................................................ 8

*Deaver v. Compass Bank*
        Case No. 13-cv-222-JSC
        2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .............................. 24

*Fernandez v. Victoria Secret Stores, LLC*
        Case No. CV 06-04149 MMM (SHx)
        2008 WL 8150856 (C.D. Cal. 2008) ................................. 13, 16, 20

*Fuentes v. Macy's West Stores, Inc.*
        Case No. CV 14-790-ODW (FFMx)
        2015 WL 9698989 (C.D. Cal. June 29, 2015)............................... 8

*Holt v. Parsec, Inc.*
        Case No. CV 10-9540-DMG (PJWx)
        2012 WL 12883820 (C.D. Cal. June 15, 2012)............................. 8

*In re Chiron Corp. Sec. Litig.*
        Case No. C-04-4293-VRW
        2007 WL 4249902 (N.D. Cal. Nov. 30, 2007)............................... 20

*In re Heritage Bond Litig.*
        Case No. 02-ML-1475 DT
        2005 WL 1594403 (C.D. Cal. June 10, 2005)............................... 14

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

*Knight v. Red Door Salons, Inc.*
    Case No. 08-1520-SC
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009)..................................................... 7

*Leetzow v. Metropolitan Life Ins. Co.*
    Case No. EDCV-15-2468-VAP (KKx)
    2017 WL 1231719 (C.D. Cal. Mar. 3, 2017) ............................................... 19

*Lewis v. Wendy's Int'l, Inc.*
    Case No. 09-7193 MMM (JCx)
    2011 WL 13176648 (C.D. Cal. Jun. 30, 2011) ............................................. 8

*Monaghan v. Telecom Italia Sparkle of North Am.*
    Case No. CV 13-646 ABC (PLAx)
    2014 WL 12639117 (C.D. Cal. Jul. 30, 2014) ............................................ 19

*Murillo v. Pacific Gas & Elec. Co.*
    Case No. CIV 2:08-1974 WBS GGH
    2010 WL 2889728 (E.D. Cal. July 21, 2010)........................................ 14, 15

*Prado v. Warehouse Demo Services, Inc.*
    Case No. CV14-3170 JFW (Ex)
    (C.D. Cal. November 2, 2015)...................................................... 12

*Ross v. U.S. Bank Nat'l Ass'n*
    Case No. C-07-2951-SI
    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010)........................................... 25

*Singer v. Becton Dickinson and Co.*
    Case No. 08-CV-821-IEG (BLM)
    2009 WL 4809646 (S.D. Cal. Dec. 9, 2009) ............................................. 25

*Thieriot v. Celtic Ins. Co.*
    Case No. C 10-04462 LB
    2011 WL 1522385 (N.D. Cal. Apr. 21, 2011)...............................6-7, 15, 25

*Williams v. Centerplate, Inc.*
    2013 WL 4525428 (S.D. Cal. Aug. 26, 2013)........................................... 12

**Other Sources**

*Newberg on Class Actions* at § 14.6 (4th ed. 2007).................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On February 2, 2024, this Court granted preliminary approval of this proposed class and representative action settlement, as embodied in the parties' Class Action and PAGA Settlement Agreement and Class Notice ("Settlement Agreement"). *See* Dkt. No. 64. Now before the Court is the motion of Plaintiffs Kevin Murphy, Gabriel Schwartz, Marc Brewer, and Garrison Moreno ("Plaintiffs" or "Class Representatives") for an award of attorneys' fees, litigation costs, administrative expense, and class representative service payments. Pursuant to the Settlement Agreement, Class Counsel seek an award of attorneys' fees of $416,666.66, representing one-third of the non-reversionary Gross Settlement Amount of $1,250,000, and reimbursement of actual litigation costs of $41,835.27. Plaintiffs also request that the Court approve payment of $14,500.00 in administration expenses to the Settlement Administrator, CPT Group, Inc, for its services in administering the Settlement, and Class Representative Service Payments of $7,500.00 to Plaintiff Kevin Murphy, $5,000.00 to Plaintiff Gabriel Schwartz, $5,000.00 to Plaintiff Marc Brewer, and $4,500.00 to Plaintiff Garrison Moreno, in recognition of their efforts in bringing this action, assisting Class Counsel throughout the litigation, their assistance in preparing for and involvement in the parties' Mandatory Settlement Conference and two private mediation sessions that lead to the parties' Settlement Agreement, their general releases of claims beyond that of the other Participating Class Members, and the financial and reputational risks they assumed to vindicate the rights of their fellow Participating Class Members. Notably, not a single Settlement Class member has filed an objection to the requested fees, costs, or service awards.

Class Counsel respectfully request that the Court approve the requested fee award of one-third of the Gross Settlement Amount (i.e., $416,666.66 in attorneys' fees) which, although it exceeds the Ninth Circuit's 25% "benchmark" award, is

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

justified in this case for the following reasons: (1) Class Counsel obtained a significant recovery for the Participating Class Members, with average payments of approximately $545.24 for a limited release of claims; (2) Class Counsel's efforts in zealously, diligently, and competently litigating this case; (3) Class Counsel's skill and considerable wage and hour class action experience; (4) the complexity of the issues in this litigation; (5) the significant risk of non-payment due to Class Counsel's undertaking this matter on a purely contingent basis while incurring significant out-of-pocket costs; (6) the positive reaction of the Participating Class Members, including zero objections to the requested amounts for attorneys' fees, costs, and Plaintiffs' service awards; and (7) the requested fee award yields a reasonable 1.51 multiplier when compared to Class Counsel's lodestar.

In addition, Plaintiffs submit that their requested service payments are reasonable in light of the significant efforts Plaintiffs have contributed towards the successful resolution of this case, their general release of claims, and the reputational and financial risks they undertook in appending their names to a class action involving more than 1,200 of their former colleagues. As explained below, both the request for attorneys' fees and the request for service awards are well within the range that courts in this District have found "presumptively reasonable."

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.   Brief Procedural History

Plaintiff Murphy worked for Defendant Fusion Learning, Inc. ("Defendant") as an hourly, non-exempt Teacher from approximately December 2019 to March 2021. Dkt. No. 49-6, ¶ 2. Plaintiff Brewer worked for Defendant as a Homework Café Teacher and Substitute Teacher from approximately August 2015 to August 2019. Dkt. No. 49-8, ¶ 2. Plaintiff Schwartz worked for Defendant as a Teacher from approximately January 2020 through July 2022. Dkt. No. 49-7, ¶ 2. Plaintiff Moreno worked for Defendant as a Teacher from approximately January 2022 through July 2022. Dkt. No. 49-9, ¶ 2. Like all Settlement Class members, Plaintiffs

were subject to Defendant's wage and hour policies and practices. Dkt. No. 49-6, ¶¶ 2-3; Dkt. No. 49-8, ¶¶ 2-3; Dkt. No. 49-7, ¶¶ 2-3; Dkt. No. 49-9, ¶¶ 2-3.

On July 8, 2021, Plaintiff Murphy filed a Representative Action Complaint, alleging a single cause of action for civil penalties under the California Private Attorneys General Act, Labor Code section 2698 *et seq*. ("PAGA"), which was removed to federal court on August 19, 2021. Dkt. No. 1. On April 14, 2022, the parties attended a private mediation, which ultimately proved unsuccessful. Moen Decl., ¶ 10. Thereafter, on April 14, 2022, Plaintiff Murphy filed a separate class action lawsuit against Defendant, Case No. 2:22-cv-04497-JAK-AS, asserting the same theories of liability on a class-wide basis. *Id*. Defendant removed Plaintiff Murphy's class action complaint to federal court on June 30, 2022. *Id*.

On March 22, 2023, the parties attended a Settlement Conference before Magistrate Judge Maria A. Audero. Moen Decl., ¶ 11. Again, the parties were unable to resolve the matter. *Id*. Following the Settlement Conference, Defendant produced additional policy-related documents, and Plaintiffs' counsel took the deposition of Defendant's Rule 30(b)(6) corporate witness. *Id*. On May 30, 2023, the parties attended a full-day mediation with Mark S. Rudy, Esq., whose mediator's proposal was ultimately accepted by the parties. *Id*.

As a material term of the Settlement, the parties agreed to file a joint stipulation for leave to file a consolidated First Amended Complaint ("FAC"), consolidating all PAGA claims alleged in the instant action [Dkt. No. 1-1] and all class action claims alleged in the related action, Case No. 2:22-cv-04497-JAK-AS, as well as adding Gabriel Schwartz, Marc Brewer, and Garrison Moreno as named plaintiffs in this action. Moen Decl., ¶ 12. On January 29, 2024, Plaintiffs filed the operative FAC. Dkt. No. 61. Plaintiffs' operative FAC alleges that Defendant: (1) failed to pay all straight time and overtime wages; (2) failed to provide all meal periods; (3) failed to authorize and permit all rest periods; (4) failed to keep accurate payroll records; (5) failed to pay waiting time penalties; (6) failed to pay wages

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

upon termination; (7) failed to reimburse necessary business expenses; (8) failed to pay all minimum wages; (9) engaged in unfair business practices; and (10) is liable for civil penalties under the Private Attorneys General Act ("PAGA"), Labor Code § 2698 *et seq*. *See id*. As discussed in Plaintiffs' Motion for Final Approval, Defendant vigorously opposed Plaintiffs' claims, and asserted several defenses as to both on the merits and class certification.

On November 9, 2023, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 49. On January 8, 2024, this Court held a preliminary approval hearing, during which the Court directed the parties to file certain additional materials in support of preliminary approval, and continued the hearing to January 29, 2024. Dkt. No. 55. After the parties filed the requested additional materials [Dkt. Nos. 56-57], the Court held a further hearing on Plaintiffs' Motion for Preliminary Approval on January 29, 2024, following which the Court granted preliminary approval of the Settlement. Dkt. No. 64.

**B.** **This Class Action Settlement Results in Significant Monetary Payments Given the Litigation Risks Involved.**

Defendant has agreed to pay a <u>non-reversionary</u> Gross Settlement Amount of $1,250,000.00. *See* Dkt. No. 49-2 at 23 ¶ 1.22. After deducting the proposed amounts for Plaintiffs' Service Payments, settlement administration expenses, attorneys' fees and costs, and the PAGA payments to the LWDA and Aggrieved Employees, Defendant will pay a Net Settlement Amount of no less than $704,998.07 to all Participating Class Members. *Id*., ¶¶ 1.28; *see also* Declaration of Matthew K. Moen ("Moen Decl."), ¶ 21; Declaration of Tarus Dancy ("Dancy Decl."), ¶ 14. Further, the parties have agreed to designate an additional $50,000.00 of the Gross Settlement Amount as the PAGA Penalties. Moen Decl., ¶ 21.

The Settlement is non-reversionary, and all Participating Class Members (i.e., Class Members who do not submit a valid and timely Request for Exclusion from the Settlement) will automatically receive Individual Class Payments. *See* Dkt.

No. 49-2 at 24 ¶ 1.36, 26 ¶ 3.1.  On March 4, 2024, the Notice Packet was mailed to all 1,294 potential Settlement Class members. Dancy Decl., ¶¶ 5, 7. Following the close of the response deadline, zero Participating Class Members objected to any portion of the Settlement, and only one individual has opted out of the Settlement, resulting in a 99.92 participation rate for the 1,293 Participating Class Members. *Id.*, ¶¶ 10-13.

Settlement funds will be distributed to Participating Class Members by (a) dividing the Net Settlement Amount by the total number of Hours Worked by all Participating Class Members during the Class Period (as those terms are defined in the Settlement Agreement), and (b) multiplying the result by each Participating Class Member's total Hours Worked. *See* Dkt. No. 49-2 at 27 ¶ 3.2.4. The average Individual Class Payment is projected to be $545.24 per Class Member, with the highest payment estimated at $3,447.21. *See* Dancy Decl., ¶ 15.

Further, all Aggrieved Employees will receive a share of the 25% portion of PAGA Penalties allocated to the Individual PAGA Payments by (a) dividing the amount of the Aggrieved Employees' 25% share of PAGA Penalties ($12,500) by the total number of PAGA Period Hours Worked by all Aggrieved Employees during the PAGA Period (as those terms are defined in the Settlement Agreement), and (b) multiplying the result by each Aggrieved Employee's PAGA Period Hours Worked. *See* Dkt. No. 49-2 at 28 ¶ 3.2.5. The average Individual PAGA Payment is projected to be $13.14 per Aggrieved Employee, with the highest payment estimated at $62.29. *See* Dancy Decl., ¶ 16.

## III.   THE COURT SHOULD APPROVE THE FEE AWARD

### A.   The Attorneys' Fee Award is Warranted Under California and Federal Law as a Percentage of the Common Fund.

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement."   Here, Plaintiffs seek

reasonable attorneys' fees and costs pursuant to several statutes, including Cal. Labor Code §§ 218.5, 226(e) (fee award for successful claim for wage statement violations), 1194 (authorizing fee award for prevailing employee in action to recover minimum wages and overtime wages), and 2699(g)(1) (authorizing recovery of attorney fees and costs for successful PAGA action), as well as Cal. Code of Civil Procedure § 1021.5.

Under California law, "[w]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff…for the benefit of all results in the creation…of that fund, such plaintiff…may be awarded attorney's fees out of the fund." *21st Century Ins. Co. v. Superior Court*, 47 Cal.4th 511, 520 (2009). In awarding attorney fees from a common fund, California courts generally award a percentage of the recovery, subject to considerations of reasonableness. The California Supreme Court has confirmed the validity of the percentage-of-the-fund method in class action cases in approving a fee award equal to one-third of the gross settlement amount, which amounted to a multiplier of approximately 2.03 to 2.13 on class counsel's lodestar. *See Laffitte v. Robert Half Int'l, Inc.*, 1 Cal.5th 480, 506 (2016) (holding that "the percentage of the fund method survives in California class action cases").

Federal district courts in the Ninth Circuit also generally employ the percentage-of-recovery method in common fund cases. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund"). Indeed, "the primary basis of the fee award remains the percentage method…" *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *see also Aichele v. City of Los Angeles*, No. 2:12-cv-10863-DMG-FFM, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) (noting that district courts have mostly shifted to the percentage method in awarding fees in representative actions). "Additionally, the percentage-of-the-fund method is

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

appropriate where—as here—the amount of the settlement is fixed without any reversionary payment to the defendant." *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385 at *5 (N.D. Cal. Apr. 21, 2011).

Here, the Gross Settlement Amount is a common fund out of which reasonable attorneys' fees may be paid, as it provides recovery of specific "sums of money" to each Class Member without any reversionary payment to Defendant.

**B.    A Fee Award of One-Third of the Gross Settlement Amount is Warranted**

In the Ninth Circuit, the typical range of reasonable attorney's fees is 20% to 33.33% of the total settlement value, with 25% considered a benchmark percentage. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."); *Cicero v. DirecTV, Inc.*, No. EDCV-07-1182, 2010 WL 2991486 at *6 (C.D. Cal. Jul. 27, 2010) [and cases cited therein]. The percentage applied in a particular case, however, depends on the facts of each case and "*in most common fund cases, the award exceeds that benchmark.*" *Knight v. Red Door Salons, Inc.*, No. 08-1520-SC, 2009 WL 248367 at *3 (N.D. Cal. Feb. 2, 2009) (emphasis added); *see also Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 fn. 11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"), *citing Newberg on Class Actions* at § 14.6 (4th ed. 2007). Notably, "courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." *Cicero, supra,* 2010 WL 2991486 at *6.

Indeed, courts in this District routinely approve fee awards ***above*** the 25% benchmark, even when doing so results in a multiplier of class counsel's lodestar. *See*, *e.g.*, *Aichele, supra*, 2015 WL 5286028 at *5-6 ("[I]n cases under $10 million, the awards more frequently will exceed the 25% benchmark, and indeed go above

30%.") (citing *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297 (N.D. Cal. 1995)); *De Sejournet v. Goldman Kurland and Mohidin, LLP,* No. 13-cv-1682-DMG (MRWx) (C.D. Cal. Mar. 18, 2016) (awarding fees of 33.33%, amounting to $475,000 out of $1,425,000 settlement sum and reflecting a 1.81 multiplier); *Buncio v. Host Int'l, Inc.*, No. CV 09-01374 DMG (PJWx) (C.D. Cal. July 18, 2011) (approving 30% fee award, amounting to $600,000 out of $2,000,000 settlement and reflecting a 1.37 multiplier, in claims-made settlement where total payout to participating class members was only $810,052.99); *Casadine v. Maxim Healthcare Svcs, Inc.*, No. CV 12-10078-DMG (CWx) (C.D. Cal. Sept. 24, 2015) (approving fee request amounting to one-third of $630,000 gross settlement fund); *Holt v. Parsec, Inc.*, No. CV 10-9540-DMG (PJWx), 2012 WL 12883820 (C.D. Cal. Jun. 15, 2012) (awarding $1,200,000 in attorneys' fees, amounting to one-third of $3,600,000 settlement amount); *Fuentes v. Macy's West Stores, Inc.*, No. CV 14-790-ODW (FFMx), 2015 WL 9698989 at *2 (C.D. Cal. Jun. 29, 2015) (Wright, J.) (awarding fees of 33.33%, amounting to $1,333,333.33 out of $4,000,000 settlement sum and reflecting a 1.63 multiplier of class counsel's lodestar in wage and hour class action); *Lewis v. Wendy's Int'l, Inc.*, No. 09-7193 MMM (JCx), 2011 WL 13176648 at **9-14 (C.D. Cal. Jun. 30, 2011) (Morrow, J.) (in wage and hour class action, awarding fees of 33.33%, amounting to $500,000 of $1,500,000 common fund); *see also In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) (noting, "in most common fund cases, the award exceeds that [25%] benchmark.").

Here, Class Counsel seek an award of 33.33% of the common fund established by the Gross Settlement Amount, based on: (1) the substantial monetary recovery obtained for the Participating Class Members; (2) Class Counsel's efforts in diligently, zealously and successfully litigating the claims at issue in the case; (3) Class Counsel's skill and considerable wage and hour class action experience; (4) the complexity of the wage and hour claims at issue in this litigation; (5) the

significant risk of non-payment due to Class Counsel's taking on this matter on a purely contingent basis, while incurring significant out-of-pocket costs; (6) the positive reaction of the Class Members, including the lack of a single objection to the requested fees, costs, and service payments; and (7) the requested fee award yields a reasonable 1.xx multiplier when compared to Class Counsel's lodestar. *See Vizcaino*, 290 F.3d at 1048-1050 (in assessing whether percentage requested is fair and reasonable, courts generally consider the results achieved, the risk of litigation, the skill required and quality of work performed, the contingent nature of the fee, and awards made in similar cases); *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1116-17 (C.D. Cal. 2008).

## 1. Class Counsel Obtained a Significant Recovery for the Class Despite Significant Risk

According to the Ninth Circuit, the "benefit to the class" is the most important factor in assessing a fee request. *In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). Class Counsel respectfully submit that the results obtained for the Participating Class Members justify the requested fee award.

Class Counsel obtained a substantial monetary recovery ($1,250,000.00) for the Settlement Class Members in the face of significant challenges and legitimate defenses. As detailed in Plaintiffs' Motion for Final Approval, Defendant presented numerous defenses to Plaintiffs' claims, both on the merits and with respect to class certification. Specifically, Defendant asserts that it properly recorded and paid for all hours worked at all times during the relevant time period, and that Plaintiffs' theory of off-the-clock liability would present individualized inquiries that would preclude class certification of any such class. Moen Decl., ¶ 14. Defendant asserts that employees are paid for all student sessions, even in scenarios where a student fails to show up for a scheduled class, such that there are instances when employees are paid for time during which they were not required to perform any work. *Id.*

Furthermore, with regard to prep time, Defendant maintains that there was a simple process in place for teachers to request and be granted additional prep time, and that Plaintiffs themselves had requested and been approved for additional prep time beyond the standard budget. *Id.* Moreover, Defendant asserts that it maintained lawful written timekeeping policies that required employees to accurately track all time for which they were performing work and to report such time to Defendants for payroll purposes. *Id.*

As to Plaintiffs' claims for meal and rest period violations, Defendant argues that it maintained lawful meal and rest period practices at all times. Moen Decl., ¶ 15. Further, Defendant argues that it schedules employee meal periods to ensure that all lawful meal periods are provided, and pays meal period premiums pursuant to Labor Code § 226.7 in the event a lawful meal period is not taken. *Id.* Defendant also asserts that employees have at all times been permitted to leave the company premises during rest periods, and argues that the attendance policy Plaintiffs rely upon only applies when employees are teaching classes, not when they are taking duty-free rest periods. *Id.* Defendant produced policies encouraging employees to "take a walk" in between student sessions which it argued was inconsistent with the idea that employees were confined to work premises. *Id.* Further, Defendant asserts that Plaintiffs' rest period claim is unmanageable and not suited for class certification, as it requires individualized inquiries into whether each employee was authorized and permitted to take a lawful rest period, and on which days, which Defendant argues Plaintiffs will be unable to substantiate with any common evidence, as rest periods are not required to be recorded, resulting in an unmanageable series of mini-trials. *Id.*

As to Plaintiffs' claim for unreimbursed expenses, Defendant asserts that this claim will fail on its merits, as Defendant never required employees to use their personal cell phones for work purposes. Moen Decl., ¶ 16. In fact, Defendant contends employee work computers have both telephone and zoom capabilities,

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

obviating the need for employees to ever use their personal cell phones to contact students or parents for work purposes. *Id.*

As to Plaintiffs' derivative claims, Defendant argues that Plaintiffs' underlying claims will fail and, as a result, the derivative wage statement, waiting time, and PAGA claims will also fail. Moen Decl., ¶ 17; *see Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1147 ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Defendant also maintains that Plaintiffs cannot show that the wage statement violations were "knowing and intentional," or that the putative class members "suffer[ed] injury" as a result of the alleged violations, as required by Labor Code § 226(e) for the imposition of wage statement penalties. Moen Decl., ¶ 17; *see* Cal. Lab. Code § 226(e)(1). Moreover, Defendant maintains that its good faith defenses to Plaintiffs' underlying claims would preclude the recovery of waiting time penalties, which are only available for the "willful" failure to pay wages, and that this Court would exercise its discretion to substantially reduce any PAGA penalties awarded. Moen Decl., ¶ 17; *see also* 8 Cal. Code Regs. § 13520 ("[A] good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."); Cal. Lab. Code § 2699(e)(2); *Carrington v. Starbucks Corporation* (2018) 30 Cal.App.5th 504 (affirming reduction of PAGA penalties to 10% of exposure).

### 2.   The Result Achieved Exceeds Results Achieved in Similar Wage and Hour Class Action Settlements

Despite the risks as to the underlying merits, Class Counsel negotiated a significant result for the Settlement Class. The average Individual Class Payment for Settlement Class members is significant at $545.24 *after* all requested deductions, and exceeds average payments in similar wage and hour class action settlements that have received final approval by California federal courts. *See, e.g., Carney v. Hillstone Restaurant Grp., Inc.*, No. 2:10-cv-2988-GW-RZ (C.D. Cal. Apr. 5, 2011) (wage and hour class action settlement of overtime, meal period, rest

period, unlawful deductions, failure to reimburse expenses, and related penalty claims where average class member recovery was approximately $179); *Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011) (granting final approval of proposed class action settlement where average recovery to settlement class members was estimated at $345); *Prado v. Warehouse Demo Services, Inc.*, Case No. CV14-3170 JFW (Ex), (C.D. Cal. November 2, 2015) (granting final approval of class action settlement for rest period violations which resulted in an average recovery of $328 to settlement class members); *Williams v. Centerplate, Inc.*, 2013 WL 4525428 at *4 (S.D. Cal. Aug. 26, 2013) (granting final approval of minimum wage, overtime wage, and meal and rest break class action settlement where average recovery for each class member was approximately $108, describing result as "very favorable," and awarding fees of 30% of common fund).

### 3.   Class Counsel's Efforts Support the Requested Fee Award

Class Counsel diligently litigated this case, and their efforts led to a substantial recovery for the Participating Class Members. Specifically, Class Counsel: (i) conducted extensive factual and legal investigation of the claims at issue; (ii) interviewed the named Plaintiffs; (iii) filed two separate lawsuits to pursue both class action and representative action allegations, as well as an amended complaint consolidating the two actions following settlement; (iv) prepared initial disclosures and reviewed Defendant's initial disclosures; (v) conducted formal written discovery and deposed Defendant's Rule 30(b)(6) corporate witness; (vi) completed substantial informal discovery, investigation, and class-wide data analysis; (vii) conferred extensively with Plaintiffs' retained expert regarding potential damages and created a comprehensive damages model for settlement purposes; (viii) attended various court hearings throughout the litigation; (ix) discussed the litigation and case strategy with Plaintiffs on numerous occasions; (x) prepared for and attended a Mandatory Settlement Conference and two separate

mediation sessions, including drafting detailed briefs analyzing the claims at issue and resultant damages analysis for each such session; (xi) negotiated and drafted the long-form Settlement Agreement and associated documents; (xii) prepared the motion for preliminary approval of class action settlement; (xiii) prepared for, traveled to, and appeared at the Preliminary Approval Hearing; (xiv) prepared supplemental filings in support of preliminary approval, and attended a continued Preliminary Approval hearing; (xv) oversaw the Notice process; and (xvi) drafted the instant Motion and supporting documents as well as the concurrently-filed Motion for Final Approval. *See* Moen Decl., ¶ 22. It was only as a result of Class Counsel's efforts that this litigation resulted in a favorable class-wide resolution.

Plaintiffs respectfully submit that their extensive work on this case, which was efficiently and competently performed all on a contingent basis, supports Plaintiffs' request for an attorneys' fee award of 33.33% of the GSA.

### 4.    Class Counsel's Experience and Skill Support the Fee Award

Class Counsel have significant wage and hour class action experience from both the plaintiff and defense side, and have been appointed as class counsel in numerous cases alleging similar claims. *See* Moen Decl., ¶¶ 2-8; Declaration of Fletcher W. Schmidt ("Schmidt Decl."), ¶¶ 2-9; Declaration of Haig B. Kazandjian ("Kazandjian Decl."), ¶¶ 3-5; Declaration of Cathy Gonzalez ("Gonzalez Decl."), ¶¶ 2-4. Collectively, Class Counsel bring more than three decades of wage and hour class action experience, and have been appointed as class counsel in hundreds of other cases and have successfully certified classes in numerous contested motions for class and conditional certification. *See id.* "All class counsel are qualified, experienced, and skilled attorneys, who prosecuted this action effectively. As a consequence, this factor weighs in favor of a generous fee award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM(SHx), 2008 WL 8150856 at *12 (C.D. Cal. 2008).

///

### 5.      The Complexity of the Issues Supports the Fee Award

"Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403 at *20 (C.D. Cal. Jun. 10, 2005). This litigation involved complex and unsettled legal issues, including the appropriate standards for certification of Plaintiffs' proposed Class, questions as to the reach of the California Supreme Court's decision in *Augustus v. ABM Security Services, Inc*., 2 Cal.5th 257 (2016), and the availability of derivative waiting time and wage statement penalties. As detailed herein, Defendant presented several substantive defenses to each of Plaintiffs' underlying claims and derivative penalty claims.

Class Counsel zealously navigated these issues to reach a favorable resolution for the Settlement Class. Because of the complexity of the issues in this case, Plaintiff submits that the requested fee award is appropriate. *See, e.g., Murillo v. Pacific Gas & Elec. Co.*, Case No. CIV 2:08-1974 WBS GGH, 2010 WL 2889728 at *12 (E.D. Cal. July 21, 2010).

### 6.      The Risk of Non-Payment Existed at All Times

"A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 580 (2004). Here, Class Counsel has litigated this case for nearly three years on a purely contingent basis, and invested significant time and resources in litigating this matter without any guarantee of payment for their services. Moen Decl., ¶¶ 10, 22-23. Not only have Class Counsel rendered their services without any compensation to date, they have also advanced all out-of-pocket litigation costs, which amount to $41,835.27. *Id*., ¶ 23, Exhibit 3;[1]

---

[1] Class Counsel's expense summary identifies Class Counsel's to-date out of pocket expenses as $41,751.89. *See* Moen Decl., Exhibit 3; Kazandjian Decl., Exhibit 1. The total amount that Class Counsel is requesting for expense reimbursement

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

Kazandjian Decl., ¶ 6, Exhibit 1. Because there was a real risk Class Counsel would not be compensated, the requested fee is appropriate. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) ("[W]here recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate"); *Murillo, supra*, 2010 WL 2889728 at *12 ("Fee enhancements in contingency cases exist to compensate for the risk of loss inherent in such cases and create financial incentives for attorneys to take cases to protect important rights and goals, such as fair labor standards"); *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001) ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is only paid for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.").

### 7.  The Reaction of the Class Members is Positive

Notice of this proposed settlement, including the amounts requested for attorneys' fees and costs and Plaintiffs' service payments, was mailed to all 1,294 potential Class Members on March 4, 2024. *See* Dancy Decl., ¶ 7. Not a single Class Member has objected to the requested fee award, and only one individual has opted out, resulting in a 99.9% participation rate. *Id.*, ¶¶ 11-13. These facts strongly support approval of the requested fee award. *See, e.g., Thieriot*, *supra*, 2011 WL 1522385 at *6 ("The fact that no members of the 390–person class objected to the proposed 33% fee award…supports an increase in the benchmark rate.").

---

($41,835.27) includes an additional $83.38 in anticipated future costs to travel to and appear at the Final Approval Hearing, which will be incurred by Class Counsel following the filing of this motion. Moen Decl., ¶ 23. The anticipated future costs are commensurate with the costs incurred to travel to and appear at the Preliminary Approval Hearing. *Id*.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS,
ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

**8.**     **The Lodestar "Cross-Check" Confirms the Reasonableness of the Fee Request**

Courts utilizing the common fund approach can also perform a lodestar "cross-check" on the reasonableness of the requested percentage award. *Vizcaino*, *supra*, 290 F.3d at 1050-51; *see also Laffitte*, 1 Cal.5th at 506 ("We hold further that trial courts have discretion to conduct a lodestar cross-check on a percentage fee…"). Here, Class Counsel's lodestar supports the requested fee award. As detailed below, Class Counsel's lodestar is approximately $274,712.50.[2] *See* Moen Decl., ¶ 25; Gonzalez Decl., ¶ 5. A 33.33% fee award therefore reflects a modest multiplier of 1.51. Courts routinely approve multipliers at this level and higher, as cited herein, and should therefore be approved.

**a.** **The Hours Expended on This Litigation are Reasonable**

The first step in determining Class Counsel's lodestar is to determine the number of hours reasonably expended. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Fee awards should include all hours which were "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Fernandez, supra*, 2008 WL 8150856 at *14 ("The lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award.").

Class Counsel is entitled to compensation for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982); *see also, Hensley,* 461 U.S. at 431 (total

---

[2] In ruling on Plaintiffs' Motion for Preliminary Approval, the Court already conducted a thorough review of Class Counsel's lodestar and detailed billing records. *See* Dkt. No. 64, at pp. 26-38. Class Counsel has applied all adjustments made by the Court in its Preliminary Approval Order to its current lodestar figure, and has replaced any previously "anticipated" time entries with actual time entries, where applicable. *See* Moen Decl., ¶¶ 25-27, Exhibit 2.

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

compensable hours include all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all the time reasonably expended on the matter"). This includes time spent preparing this motion for attorneys' fees. *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (It is "well established that time spent in preparing fee applications" is compensable) (citation omitted). This also includes reasonable travel time for case-related activities. *See Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) (holding travel time that would customarily be billed to clients is recoverable on a motion for attorneys' fees), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993); *Allen v. City of Los Aneles*, No. CV 91-2497 JGD, 1995 WL 433720 at * 10 (C.D. Cal. Jan. 13, 1995) (awarding fees "for travel time to attend meetings, trial, depositions, and travel between activities related to the case.").

Here, the tasks performed by Class Counsel were all reasonably necessary in the effective prosecution of Plaintiffs' claims and in negotiating and arriving at the Settlement. The number of hours spent working on this case is reasonable because, at the time the work was performed, Class Counsel reasonably believed it to be done in the pursuit of success. A different standard for determining "reasonableness" would put Class Counsel in the precarious position of constantly second-guessing litigation strategy in a statutory fee case, even though it would be reasonable and in the best interests of the client for counsel to pursue the same strategy for a fee-paying client. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain…the court should defer to the winning lawyer's professional judgment [regarding hours]; after all, he won, and might not have, had he been more of a slacker.").

///

**b. Counsel's Requested Hourly Rates are Reasonable**

To determine Class Counsel's hourly rates, the Court should look to rates in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. *Chalmers v. City of Los Angele*s, 796 F.2d 1205, 1210-1211 (9th Cir. 1986); *Blum v. Stenson*, 465 U.S. at 895-96. The "relevant community" is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). When setting rates, courts should utilize attorneys' "current" rates, i.e., their rates at the time of the fee application. This accounts for the delay in receiving payment, as well as lost interest and inflation. *See Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir.1991) (affirming district court's use of current hourly rates); *see also In re HPL Techs., Inc. Sec. Litig.*, 366 F.Supp.2d 912, 919–20 (N.D. Cal. 2005) (explaining that the use of current rates "simplifies the calculation and accounts for the time value of money in that lead counsel ha[ve] not been paid contemporaneously").

In its Order Granting Preliminary Approval, the Court already reviewed the hourly rates requested by Class Counsel and determined that, "The hourly rates that are proposed are reasonable in light of the work performed, the experience of counsel and the rates used by counsel with similar experience." Dkt. No. 64, at p. 26. Class Counsel's request for attorneys' fees using a lodestar cross-check is based on the following hourly rates: $850 for 17th-year attorney Paul K. Haines; $750 for 11th-year attorney Fletcher W. Schmidt; $725 for 13th-year attorney Haig B. Kazandjian; $725 for 8th-year attorney Cathy Gonzalez; $650 for 8th-year attorney Matthew K. Moen; and $175 for firm paralegals. Class Counsel submit these hourly rates are reasonable because they are in line with the rates at which they have previously been approved; because of their skill, wage and hour class action experience and reputation; fee awards to other attorneys of similar experience in this District; and the *Laffey* Matrix. *See* Moen Decl., ¶¶ 4-8, Exhibit 4; Schmidt Decl., ¶¶ 2-9; Kazandjian Decl., ¶¶ 3-5; Gonzalez Decl., ¶¶ 2-5.

"Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010) (Stotler, J.). Courts in the Central District have approved similar hourly rates for attorneys with similar experience as Class Counsel. *See, e.g., Leetzow v. Metropolitan Life Ins. Co.*, Case No. EDCV-15-2468-VAP (KKx), 2017 WL 1231719 at **2-3 (C.D. Cal. Mar. 3, 2017) (Phillips, J.) (in 2017, approving hourly rate of $600 for attorney with 11 years of experience); *Charlebois v. Angels Baseball LP*, Case No. SACV 10-0853 DOC (ANx), 2012 WL 2449849 at *5 (C.D. Cal. May 30, 2012) (Carter, J.) (in 2012, approving hourly rate of $460 for attorney with seven years of experience for work performed in 2011); *\Monaghan v. Telecom Italia Sparkle of North Am.*, Case No. CV 13-646 ABC (PLAx), 2014 WL 12639117 at *2 (C.D. Cal. Jul. 30, 2014) (Collins, J.) (in 2014, approving $500 hourly rate for 8th-year plaintiff's attorney in wage and hour case) (*rev'd in part on other grounds*, 647 Fed.Appx. 763). In light of the above, the requested hourly rates are eminently reasonable.

Class Counsel also have extensive wage and hour class action experience, having collectively handled over 100 wage and hour class actions and been appointed class counsel on numerous contested certification motions. Moen Decl., ¶¶ 5-6, 8; Schmidt Decl., ¶¶ 3-5; Kazandjian Decl., ¶¶ 3-5; Gonzalez Decl., ¶¶ 2-4. Mr. Haines was recognized by Thomson Reuters as a Southern California "Rising Star" in every year from 2015 to 2017, and was selected as a Southern California "Super Lawyer" in every year from 2018 to 2024. Moen Decl., ¶ 8. Mr. Moen was likewise selected as a "Rising Star" by the same publication in every year from 2020 to 2024. *Id.*, ¶ 7. Mr. Schmidt was likewise selected as a "Rising Star" by the same publication in every year from 2018 to 2024. Schmidt Decl., ¶ 8. Class Counsel's extensive experience is a further justification for their requested hourly rates, which, as shown above, are equivalent to hourly rates previously approved in this District.

Class Counsel's requested hourly rates are also reasonable under the *Laffey* matrix, which has been utilized in this and other California district courts as "a widely recognized compilation of attorney and paralegal rate data." *Fernandez*, *supra*, 2008 WL 8150856 at *14 (citing *In re Chiron Corp. Sec. Litig.*, Case No. C-04-4293-VRW, 2007 WL 4249902 at *6 (N.D. Cal. Nov. 30, 2007)); *see also Theme Promotions, Inc. v. News America Mktg. FSI, Inc.*, 731 F.Supp.2d 937, 948 (N.D. Cal. 2010).  As the court noted in *Theme Promotions*, "[t]he rates posted in the *Laffey* matrix are tailored for the District of Columbia, which has a different cost of living index" from the Los Angeles area.  Thus, "to adjust the rates for the relevant legal market, the court will use the federal locality pay differentials based on federally compiled cost of living data." *Id.* (citing *In re HPL Tech., Inc. Sec. Litig.*, 366 F.Supp.2d 912, 921 (N.D. Cal. 2005)); *see also Fernandez*, 2008 WL 8150856 at *14 (recognizing "where use of the *Laffey* matrix has been disapproved [in the Central District], it has been because it produced a rate that the court determined was *too low*") (emphasis in original).

However, even without adjusting the *Laffey* Matrix figures to account for the higher cost of living in this District, the *Laffey* Matrix demonstrates Class Counsel's requested rates are reasonable. The current *Laffey* Matrix lists hourly rates of $777 for attorneys in their 8th to 10th years out of law school, $878 for attorneys in their 11th to 19th years out of law school, and $239 for paralegals. *See* Moen Decl., Exhibit 4.  All of Class Counsel's requested hourly rates fall below these rates.

### c.  <u>The Lodestar Multiplier is Reasonable</u>

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). In the Ninth Circuit, the lodestar is "routinely enhanced…to reflect the risk of non-payment in common fund cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir.

1994); *see also Vizcaino*, 290 F.3d at 1051 (observing "multiples ranging from one to four are frequently awarded in common fund cases" and finding multiplier of 3.65 reasonable).

Based on Class Counsel's hours and requested hourly rates, Class Counsel's lodestar is approximately $274,712.50. *See* Moen Decl., ¶ 25, Exhibit 2. Thus, the requested fee yields a reasonable 1.51 multiplier, which is well within the range of reasonableness, as has been held by numerous courts. *See*, *e.g.*, *Craft, supra*, 624 F.Supp.2d at 1125 (awarding 5.2 multiplier and collecting cases with cross-check multipliers from 4.5 to 19.6); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 277 (C.D. Cal. Dec. 29, 2014) (awarding multiplier of about 3.6); *Chavez, supra*, 162 Cal.App.4th at 66, FN1(affirming 2.5 multiplier).

## IV.   PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE

Class Counsel seek a total reimbursement of $41,835.27 for out-of-pocket costs reasonably incurred in litigating this matter, which is more than $18,000.00 *less* than the $60,000.00 amount preliminarily approved by the Court as set out in the Settlement Agreement. *See* Moen Decl., ¶ 23, Exhibit 3; Kazandjian Decl., ¶ 6, Exhibit 1; Dkt. No. 64, at pp. 38-39. The costs Plaintiffs seek to recover are the types of costs that are routinely approved by California federal courts. *See*, *e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee paying client"); *Ashker v. Sayre*, No. 05-3759-CW, 2011 WL 825713 at * 3 (N.D. Cal. Mar. 7, 2011) ("The costs of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are reimbursable); *Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (legal research costs reimbursable); *In re Immune Response Securities Litig.*, 497 F.Supp.2d 1166, 1177-78 (S.D. Cal. 2007) (mediation expenses, consultant and expert fees, legal research, copies, postage, filing fees, messenger and federal express costs reimbursable).

Class Counsel's out-of-pocket costs includes filing fees, messenger fees, legal research expenses, copying costs, mediation fees, postage, expert fees, and travel expenses for court hearings. *See* Moen Decl., Exhibit 3; Kazandjian Decl., Exhibit 1. Moreover, not a single Class Member has objected to counsel's request for up to $60,000 in costs. Dancy Decl., ¶ 12. Because the litigation expenses by Class Counsel were reasonably incurred, and no Class Member has objected to them, the Court should grant the request for costs.

## V. THE ADMINISTRATOR'S EXPENSES SHOULD BE APPROVED

The $14,500.00 requested for CPT Group, Inc. for its services as settlement administrator is also fair, reasonable, and adequate. CPT Group, Inc.'s work performed in this case includes, but is not limited to: (i) preparing, translating, and printing Notice Packets and mailing them via U.S. first-class mail to all potential Settlement Class members; (ii) processing undeliverable mail and locating updated addresses for Settlement Class members; (iii) establishing a toll-free number to assist and address any questions from Settlement Class members; (iv) receiving and reporting any Requests for Exclusions; (v) providing weekly reports to the parties; (vi) establishing and administering a qualified settlement fund to disburse all settlement payments; (vii) calculating Individual Class Payments for each Participating Class Member; (viii) issuing and distributing Class Counsel's fees and costs, the Named Plaintiffs' service payments, the LWDA payment and Individual Class Payments for each Participating Class Members; (ix) calculating and remitting all amounts due to the appropriate federal, state, and local tax authorities; (x) receiving and reviewing other communications about the Settlement; (xi) filing any required reports with the Court; (xii) establishing and maintaining case specific email address and static website; and (xiii) performing any additional tasks requested by the Parties. *See* Dancy Decl., ¶ 2. Given the amount of work performed by CPT Group, Inc. in connection with the Settlement, the size of the Settlement

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS

and the Class, and the necessity of its work to the successful administration of the Settlement, the $14,500.00 sought for CPT Group, Inc. is reasonable.

## VI.   THE REQUESTED SERVICE PAYMENTS SHOULD BE APPROVED

In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The Court may award incentive payments "to compensate [plaintiffs] for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and…to recognize [their] willingness to act as a private attorney general." *Id.* at 958-59; *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1333 (2011) (recognizing that "fear of economic retaliation" can force employees "quietly to accept substandard conditions"). Incentive payments are therefore necessary to incentivize employees to report violations and vindicate their and their fellow employees' rights.

Here, Plaintiffs request Class Representative Service Payments of $7,500.00 to Plaintiff Kevin Murphy, $5,000.00 each to Plaintiffs Gabriel Schwartz and Marc Brewer, and $4,500.00 to Plaintiff Garrison Moreno, as compensation for their roles in bringing and prosecuting this action, assisting Class Counsel, their agreement to a general release of all claims subject to a waiver of Civil Code section 1542, and the benefits conferred onto the Settlement Class members as a result of the litigation. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (awarding named plaintiff a $10,000 incentive payment *plus* $5,000 for his release of claims, in a $1,000,000 wage and hour class action settlement).

Plaintiffs devoted significant time and effort assisting Class Counsel in advancing their claims on behalf of the Settlement Class members. Plaintiff' efforts included gathering and reviewing relevant documents and records for use in the lawsuit, discussing Defendant's meal and rest period policies and practices with Class Counsel, remaining in constant contact with Class Counsel, identifying other potential witnesses and class members, meeting with Class Counsel on numerous

occasions to discuss he lawsuit, review documents and discovery, and discuss strategy, preparing for two full-day mediation sessions and a settlement conference, and attending  and participating in a full-day settlement conference. Dkt. No. 49-6, ¶ 5; Dkt. No. 49-7, ¶ 5; Dkt. No. 49-8, ¶ 5; Dkt. No. 49-9, ¶ 5.  Plaintiff Murphy estimates that he has spent more than 40 hours assisting in this litigation, Plaintiff Schwartz estimates that she has spent more than 20 hours assisting in this litigation, Plaintiff Brewer estimates that he has spent more than 20 hours assisting in this litigation, and Plaintiff Moreno estimates that he has spent more than 18 hours assisting in this litigation. *Id.*

Moreover, by their participation in this lawsuit, Plaintiffs exposed themselves to substantial "reputational risk" by agreeing to be the named plaintiffs in a wage and hour class action against their former employer and alerting their former co-workers (through the notice process) that they sued a former employer. *See Deaver v. Compass Bank*, No. 13-cv-222-JSC, 2015 WL 8526982 at **14-15 (N.D. Cal. Dec. 11, 2015) (approving $7,500 award in $500,00 wage and hour settlement, finding the award "particularly appropriate in this wage and hour class action, where Plaintiff undertook a significant 'reputational risk' in bringing this action against her former employer"). Further, during the Parties' Mandatory Settlement Conference—at which Plaintiff Murphy was in attendance and at which time Plaintiff Murphy was the lone named plaintiff in this action—Judge Audero informed Plaintiff Murphy that Defendant would be making a Rule 68 Offer of Judgment and he could be responsible for Defendant's litigation costs thereafter if he rejected the Offer and did not obtain a more favorable result through the litigation. Moen Decl., ¶ 30. Following Defendant's issuance of the Rule 68 Offer, which Plaintiff Murphy rejected, Plaintiff Murphy knowingly bore the risk of being responsible for a substantial portion of Defendant's litigation costs. *Id*.

The awards sought by Plaintiffs are also reasonable when viewed in context of the overall settlement. The combined incentive awards—$22,000—equal just

1.7% of the gross settlement amount. *See Singer v. Becton Dickinson and Co.*, Case No. 08-CV-821-IEG (BLM), 2009 WL 4809646 (S.D. Cal. Dec. 9, 2009) (approving incentive payment of 2.5% of gross settlement fund); *Thieriot, supra*, 2011 WL 1522385 (approving incentive payment of 1.8% of gross settlement fund); *Ross v. U.S. Bank Nat'l Ass'n*, No. C-07-2951-SI, 2010 WL 3833922 at *3 (N.D. Cal. Sept. 29, 2010) (approving award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000, based on their contributions to litigation and the risk that being a class representative would harm their reputation). When viewed in light of the overall settlement, the requested incentive awards are reasonable.

Finally, as of this date, not a single one of the 1,293 Participating Class Members has objected to Plaintiffs' requested service payments after being notified of these anticipated requests in the Notices Packets. *See* Dancy Decl., ¶ 12, Exhibit A. For these reasons, Plaintiffs and Class Counsel respectfully request that the Court grant the requested Class Representative Service Payments.

## VII.   **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court grant $416,666.66 for attorneys' fees to Class Counsel, $41,835.27 to Class Counsel for reimbursement of actual litigation costs incurred, $14,500.00 in settlement administration costs to CPT Group, Inc., and Class Representative Service Payments of $7,500.00 to Plaintiff Kevin Murphy, $5,000.00 each to Plaintiffs Gabriel Schwartz and Marc Brewer, and $4,500.00 to Plaintiff Garrison Moreno.

Dated:  May 20, 2024

Respectfully submitted,

HAINES LAW GROUP, APC

By:

Matthew K. Moen

Attorneys for Plaintiffs

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, ADMINISTRATION EXPENSES, AND SERVICE PAYMENTS